UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMUEL D. MAYS,

                              Plaintiff,

              v.

GEISHA FALU, et al.

                              Defendants.

No. 18-cv-6145 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

Samuel D. Mays
Malone, NY
*Pro se Plaintiff*

Karen D. Edelman-Reyes, Esq.
Orange County Attorney's Office
Goshen, NY
*Counsel for Defendants Falu and Snell*

KENNETH M. KARAS, United States District Judge:

        Pro se Plaintiff Samuel D. Mays ("Plaintiff") brings this Action, pursuant to 42 U.S.C.

§ 1983, against Correction Officer ("C.O.") Geisha Falu ("Falu"), C.O. David Snell ("Snell";

together with Falu, "State Defendants"), and inmate Brown ("Brown"; with Falu and Snell,

"Defendants").  (*See generally* Am. Compl. (Dkt. No. 22).)  Plaintiff alleges that Falu and Snell

violated his rights under the Eighth Amendment when they placed him in a holding unit with

Brown, who then attacked Plaintiff.

        Before the Court is State Defendants' Motion To Dismiss the Complaint (the "Motion")

pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* State Defs.' Not. of Mot. ("State

Defs.' Mot.") (Dkt. No. 38).)  For the following reasons, State Defendants' Motion is denied.

However, the Court dismisses Plaintiff's Complaint against Defendant Brown under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Complaint and Amended Complaint, as well as Plaintiff's supplement to the Amended Complaint, and a letter that Plaintiff submitted to the Court in opposition to State Defendants' request for leave to file this Motion.[1] The facts are taken as true for the purpose of resolving the Motion. At the time of the alleged incident, Plaintiff was incarcerated at Orange County Jail ("OCJ"). (Compl. 2 (Dkt. No. 2).)

Sometime prior to the alleged incident, Plaintiff and Brown got into an argument while Brown was serving food to other inmates. (Letter from Pl. to Court (July 1, 2019) ("Pl.'s July 1 Letter") 1 (Dkt. No. 36).)[2] According to Plaintiff, Brown served two trays of food to one inmate, causing Plaintiff to need to wait for another tray from the kitchen. (*Id.*) Plaintiff and Brown

---

[1] On March 7, 2019, Plaintiff filed a letter, (Letter from Pl. to Court (Mar. 7, 2019) ("Am. Compl.") (Dkt. No. 22)), that the Court interpreted as a response to the Court's Order that Plaintiff submit an amended complaint, (Dkt. No. 23). The Court construes this submission as supplementing, as opposed to replacing, the original Complaint, as Plaintiff refers back to his original Complaint in the letter. (Am. Compl. ("[T]he [C]ourt ordered me . . . to show cause, which I've already done.").) The Court will refer to this document as the "Amended Complaint."

On March 21, 2019, Plaintiff submitted another document to the Court titled "Notice of Motion," (Dkt. No. 27), which sets forth additional facts that are consistent with those in the Complaint and the Amended Complaint. (Pl.'s Not. of Mot. ("Am. Compl. Supp.") 2–3.) The Court therefore construes this document as supplementing the Amended Complaint, and will refer to it as the "Amended Complaint Supplement."

Lastly, on July 1, 2019, Plaintiff wrote a letter to the Court opposing State Defendants' request for leave to file the instant Motion. (Pl.'s July 1 Letter.)

[2] Plaintiff does not provide the date of this earlier altercation with Brown.

"argu[ed] over [Plaintiff's] chow/food," and Plaintiff was "moved" due to this incident. (*Id.*) A no-contact order was put in place between Plaintiff and Brown. (*Id.*)

On November 20, 2017, at approximately 8:30 a.m., Plaintiff was "called to booking for court." (Compl. 3.) As Plaintiff was being "shackled," Falu informed Snell that Plaintiff had a "no contact [order]" with Brown, (Am. Compl. Supp. 2),[3] and stated that Plaintiff and Brown should not be placed in the same holding unit, (Compl. 3).[4] Once Plaintiff was in the holding unit, he sat with his back "turned." (Am. Compl. Supp. 2.) Plaintiff alleges that Falu and Snell then "intentionally place[d] Brown" in the unit, (Am. Compl.), and "when the doors opened up," Brown entered the unit and "charged [Plaintiff] while [he] was seated," (Am. Compl. Supp. 3). Brown grabbed Plaintiff and repeatedly pushed him against the wall. (Compl. 3.) Plaintiff attempted to push Brown back, but he was still shackled, and his "cuffs were too tight." (*Id.*) Brown then "hit [Plaintiff] in [his] side with the chains from the shackles." (*Id.*) Unidentified corrections officers "rushed in and pulled [Brown] off [Plaintiff]." (*Id.*) Brown was escorted out of the holding unit, and Plaintiff was sent to court. (Am. Compl. Supp. 3.) That evening, unidentified corrections officers photographed Plaintiff's injuries in the sergeant's office. (*Id.*; Compl. 3.) As a result of the incident, Plaintiff suffered fractured ribs, a swollen back, and loss of sleep. (*Id.*; Am. Compl.)

---

[3] To avoid confusion, the Court cites the ECF page numbers stamped on the top of each page of this submission.

[4] Falu is identified in Plaintiff's Complaint as "Jane Doe," and Snell as "John Doe." (Compl. 3.) On August 13, 2018, the Court ordered Defendants to identify the "two Doe correctional officers who[,] on November 20, 2017, placed [P]laintiff in a bull pen with Defendant Brown." (Dkt. No. 8.) On October 9, 2018, counsel for Defendants identified "Jane Doe" as Falu and "John Doe" as Snell. (Letter from Karen Edelman-Reyes, Esq. to Court (Oct. 9, 2018) ("Oct. 9 Edelman-Reyes Letter") (Dkt. No. 13.))

B. Procedural Background

Plaintiff filed his initial Complaint on July 5, 2018 against John Doe, Jane Doe, and Brown. (*See* Compl.) Plaintiff's request to proceed in forma pauperis was granted on August 8, 2018. (*See* Dkt. No. 6.) On August 14, 2018, the Court issued an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), to determine the correct names of the John Doe and Jane Doe Defendants. (Dkt. No. 8.) In response, on October 9, 2018, State Defendants filed a letter identifying Geisha Falu as Jane Doe and David Snell as John Doe. (Oct. 9 Edelman-Reyes Letter.) The Court thereafter instructed Plaintiff to file an amended complaint by November 10, 2018 that included Falu and Snell as Defendants. (Dkt. No. 14.) Plaintiff sent letters to the Court on November 20, 2018 and December 7, 2018 asking for status updates on his case, but did not file an amended complaint at that time. (Letter from Plaintiff to Court (Nov. 20, 2018) (Dkt. No. 17); Letter from Plaintiff to Court (Dec. 7, 2018) (Dkt. No. 18).)

On December 12, 2018, the Court again instructed Plaintiff to file an amended complaint naming Falu and Snell as Defendants, and gave Plaintiff a deadline of December 26, 2018. (Dkt. No. 19.) When Plaintiff failed to respond, the Court issued an Order To Show Cause on January 8, 2019. (Dkt. No. 20.) When Plaintiff again failed to respond, the Court dismissed the Action without prejudice for failure to prosecute on February 13, 2019. (Dkt. No. 21.) Thereafter, Plaintiff sent a letter to the Court on March 7, 2019. (Am. Compl.) The Court construed Plaintiff's letter as an Amended Complaint and reopened the case. (Dkt. No. 23.) Defendants Falu and Snell were served. (Dkt. Nos. 30–31.)

On June 11, 2019, State Defendants filed a pre-motion letter indicating the grounds on which they would move to dismiss the Amended Complaint. (Letter from Karen Edelman-Reyes, Esq. to Court (June 11, 2019) (Dkt. No. 34).) Plaintiff responded to this letter on July 8,

2019.  (Am. Compl. Supp.)  With leave of the Court, State Defendants moved to dismiss on July 25, 2019.  (State Defs.' Mot.; State Defs.' Mem. of Law in Support of Motion ("State Defs.' Mem.") (Dkt. No. 40); State Defs.' Decl. in Support of Motion ("State Defs.' Decl.") (Dkt. No. 39).)  On August 9, 2019, "in an abundance of caution," State Defendants filed a letter sent to them by Plaintiff that may have been a response to the instant Motion.  (Letter from Karen Edelman-Reyes, Esq. to Court (Aug. 9, 2019) Ex. A (Dkt. No. 43).)  State Defendants filed a reply on September 11, 2019.  (State Defs.' Decl. in Further Support of Motion To Dismiss (Dkt. No. 44).)  On November 19, 2019, State Defendants filed another letter sent to them by Plaintiff that appeared to be an additional response to the Motion.  (Letter from Karen Edelman-Reyes, Esq. to Court (Nov. 19, 2019) Ex. A (Dkt. No. 46).)  The Court deems the Motion fully submitted.

## II.  Discussion

State Defendants move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).  (*See generally* State Defs.' Mem.)

### A.  Rule 8

State Defendants argue that Plaintiff's Amended Complaint fails to comply with Federal Rule of Civil Procedure 8 because Plaintiff does not describe, for example, "what actually occurred to have suffered an injury," and does not specify "the date, the time, and the place" where the alleged incident occurred.  (*Id.* at 5.)  State Defendants also argue that Plaintiff "does not explain how the incident took place, when the incident took place, [] where he was when the incident took place . . .[,] the nature of the no contact provision [or] the reason for its existence[,] . . . what actions, if any, were taken by the [corrections officers] prior to or in response to the alleged incident[,] . . . [the] year [of] the occurrence[,] . . . [and the] geographic location, location

inside of any facility, [and] the time of the alleged occurrence." (*Id.*) As relevant here, Rule 8 provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and that "[e]ach allegation must be simple, concise, and direct," *id.* at 8(d)(1).

The "principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see also Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004) ("The key to Rule 8(a)'s requirements is whether adequate notice is given."). "Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (citation and quotation marks omitted); *see also Clifton v. HRA Nyc Govt*, No. 16-CV-1753, 2016 WL 4203486, at *2 (E.D.N.Y. Aug. 9, 2016) ("[The plaintiff] must provide facts sufficient to allow each defendant to have a fair understanding of what [the plaintiff] is complaining about and to know whether there is a legal basis for recovery."). If the Complaint "fails to comply with th[is] requirement[ ], the . . . court has the power . . . to dismiss [it]." *Simmons*, 49 F.3d at 86. Dismissal for failure to comply with Rule 8 "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citation and quotation marks omitted); *see also Guichardo v. Officer Keefrey*, No. 15-CV-6478, 2015 WL 7575904, at *2 (E.D.N.Y. Nov. 24, 2015) (same). In this context, "dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases." *Boykin v. KeyCorp.*, 521 F.3d 202, 216 (2d Cir. 2008) (italics omitted).

While Plaintiff's Amended Complaint is certainly brief, it is not in violation of Rule 8. The Amended Complaint "disclose[s] sufficient information to permit . . . [D]efendant[s] to have a fair understanding of what . . . [P]laintiff is complaining about and to know whether there is a legal basis for recovery." *Kittay*, 230 F.3d at 541 (quotation marks omitted). For example, the Amended Complaint contains a succinct retelling of a specific incident and ascribes the key act—placing Brown in the "bullp[e]n" with Plaintiff when there was a no-contact order between the two inmates—to Falu and Snell. (Am. Compl.) Plaintiff also specifies that as a result of the encounter, he suffered fractured ribs and swelling, and indicates that he is seeking compensation for pain and suffering. (*Id.*) *See Simmons*, 49 F.3d at 87 (finding "it clear that [the plaintiff's] amended complaint gave [the] defendants fair notice of the claims asserted" where, despite lacking in some details, the plaintiff had "ascribed specific acts to specific individual defendants"). As such, "[t]he Court can identify nothing confusing, ambiguous, vague, or otherwise unintelligible about Plaintiff's rather straightforward factual allegations." *Jones v. Westchester County*, 182 F. Supp. 3d 134, 148 (S.D.N.Y. Sept. 30, 2016); *cf. Greenland v. Mun. of Westchester Cty.*, No. 18-CV-3157, 2019 WL 4640061, at *3–4 (S.D.N.Y. Sept. 24, 2019) (dismissing the plaintiff's "unintelligible" complaint under Rule 8 when the plaintiff "fail[ed] to specify any particular action that [the] [d]efendants [took] to violate [the] [p]laintiff's constitutional rights").

Moreover, because Plaintiff is pro se, the Court may also consider facts alleged in "materials outside the [C]omplaint to the extent that they are consistent with the allegations in the [C]omplaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted). These materials may include "documents incorporated by reference in the [C]omplaint." *Willis v. Rochester Police Dep't*, No. 15-CV-

6284, 2018 WL 4637378, at *2 (W.D.N.Y. Sept. 27, 2018).  Here, Plaintiff's Amended

Complaint references his original Complaint, (Am. Compl.), which contains additional consistent

facts relevant to Plaintiff's allegations, (Compl. 2–3).  For example, Plaintiff asserts that the

incident took place at OCJ in a "booking holding unit" on November 20, 2017 at 8:30 a.m. and

concisely walks through the events before, during, and after the alleged assault by Brown.  (*Id.*)

Plaintiff also cites a possible witness, describes his injuries in detail, and provides information on

exhaustion and the relief he seeks.  (*Id.* at 3–5.)  Accordingly, the "Court cannot say that the . . .

[Complaint and] Amended Complaint fail[] to put . . . Defendants on fair notice of Plaintiff's

claims."  *Perkins v. Perez*, No. 17-CV-1341, 2019 WL 1244495, at *4 (S.D.N.Y. Mar. 18, 2019)

(quoting *Ong v. Park Manor (Middletown Park) Rehab. & Healthcare Ctr.*, 51 F. Supp. 3d 319,

346 (S.D.N.Y. 2014)).

### B.  Rule 12(b)(6)

#### 1.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "Nor does a complaint suffice if it

tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation

marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to

relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been

stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering State Defendants' Motion, the Court is required to "accept as true all of the factual allegations contained in the [C]omplaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (same). And, the Court must "draw[] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedure and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v.*

*Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a] defendant's request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), and "documents either in [the] plaintiff['s] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted).

2. Analysis

State Defendants seek dismissal of the Amended Complaint on grounds that Plaintiff fails to allege the personal involvement of State Defendants in a constitutional violation and that Plaintiff fails to state a claim under the Eighth Amendment. The Court addresses each argument

separately to the extent necessary.[5]

### a. Personal Involvement

State Defendants argue that the Complaint should be dismissed against them because they were not personally involved in the alleged constitutional violations. (State Defs.' Mem. 10–11.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (alterations, italics, and quotation marks omitted). In other words, "because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that State Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290,

---

[5] State Defendants also argue that they are entitled to qualified immunity. (State Defs.' Mem. 9–10.) This "argument," however, merely restates the qualified immunity case law without meaningfully applying that case law to the facts of this case. Accordingly, the Court declines to consider at this time whether State Defendants are protected by qualified immunity.

State Defendants further argue that Plaintiff's claim for punitive damages is barred by the Prison Litigation Reform Act. (*Id.* at 11–12.) Yet, Plaintiff has not specified the type of damages he is seeing, which State Defendants themselves acknowledge. (*Id.* at 11.) Accordingly, the Court need not consider State Defendants' argument on this issue at this time.

2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[]" with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff plausibly alleges the involvement of both Falu and Snell in the alleged constitutional violation. Plaintiff avers that both Falu and Snell knew of his no-contact order with Brown, (Compl. 3; Am. Compl. Supp. 2), and that, despite the order, they "intentionally place[d] Brown in the bullp[e]n" with Plaintiff, which led to the altercation and Plaintiff's injuries, (Am. Compl.). This allegation establishes a ground for demonstrating "direct[]" participation in the alleged violation. *See Grullon*, 720 F.3d at 139. If, as Plaintiff claims, Falu and Snell were indeed aware of the no-contact order between Plaintiff and Brown, but proceeded to place them in the same holding unit, they may be liable for constitutional violations resulting from their actions. *See Blandon v. Aitchison*, No. 17-CV-65, 2019 WL 1206370, at *4 (S.D.N.Y. Mar. 14, 2019) (finding that the plaintiff sufficiently pled the personal involvement of two defendants who allegedly knew of another inmate's violent proclivities and failed to remedy the issue before the plaintiff was attacked by the inmate); *cf. Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at *6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the plaintiff failed to allege that the defendants were "present" for the alleged violation or "participated directly" in or "somehow permitted" the alleged violation). The Court concludes that Plaintiff has plausibly alleged Falu's and Snell's personal involvement in the purported constitutional violation.

### b. Eighth Amendment

Plaintiff alleges that Defendants failed to protect him from attack by another inmate while he was incarcerated at OCJ. (Compl. 3; Am. Compl.) Such claims are analyzed under the Fourteenth Amendment for pretrial detainees and under the Eighth Amendment for convicted

prisoners. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment . . . [because] [a] detainee's rights are at least as great as the Eighth Amendment protections available to a convicted prisoner." (citations and quotation marks omitted)). Although Plaintiff does not indicate whether he was a pretrial detainee or convicted prisoner on November 20, 2017, the Court takes judicial notice of the certification of the Supreme and County Courts of Orange County submitted by State Defendants. *See Jackson v. Valletta*, No. 19-CV-101, 2019 WL 632289, at *1 n.1 (D. Conn. Feb. 14, 2019) (taking judicial notice of correction department records to determine whether the plaintiff was a "sentenced prisoner or pretrial detainee"); *Williams v. Dobrossy*, No. 13-CV-3231, 2013 WL 3766565, at *1 (E.D.N.Y. July 16, 2013) (taking judicial notice of the plaintiff's dates of arrest and conviction). Plaintiff was convicted on August 14, 2017 and sentenced on September 13, 2018. (State Defs.' Decl. Ex. B, at 2 (Dkt. No. 39-2).)[6] Thus, the alleged incident on November 20, 2017 took place after Plaintiff's conviction, and the Court will determine whether Plaintiff has stated a claim for failure to protect under the Eighth Amendment. *See Morrison v. United States*, No. 17-CV-6779, 2019 WL 5295119, at *4 (S.D.N.Y. Oct. 18, 2019) ("While the constitutional status of convicted, but not sentenced, defendants remains an unanswered question in th[e] [Second] Circuit, district courts apply the Eighth Amendment, not the Fifth or Fourteenth Amendments, to individuals in the [inmate's] circumstance."); *Stewart v. Schiro*, No. 13-CV-3613, 2015 WL 1854198, at *11 (E.D.N.Y. Apr. 22, 2015) (agreeing with the "weight of the authority" that persons who have been convicted, but not sentenced, do not have the same protections as pretrial

---

[6] To avoid confusion, the Court cites the ECF page numbers stamped on the top of each page of this exhibit.

detainees for alleged constitutional deprivations); *Maldonado v. Kinlock*, No. 09-CV-8435, 2012 WL 3597049, at *5 (S.D.N.Y. Aug. 21, 2012) (concluding that the convicted plaintiff awaiting sentencing could not be classified as a pretrial detainee for a Due Process Clause analysis); *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 539 (S.D.N.Y. 2005) ("[P]laintiff's excessive force claim, which arose after he was convicted but before he was sentenced, is to be analyzed under the Eighth Amendment.").

### i. Legal Standard

The Eighth Amendment, which prohibits cruel and unusual punishment, requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (same). Specifically, "[p]rison officials have a duty to protect prisoners from violence at the hands of other inmates since being violently assaulted in prison is 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" *Lee v. Artuz*, No. 96-CV-8604, 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting *Farmer*, 511 U.S. at 834). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. Instead, "the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." *Hayes*, 84 F. 3d at 620; *see also Price v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014) ("Prison officials are liable under the Eighth Amendment for harm incurred by an inmate if they act with deliberate indifference to the inmate's safety.").

To satisfy the deliberate indifference standard, a plaintiff must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) "the defendant

14

prison officials possessed sufficient culpable intent." *Hayes*, 84 F.3d at 620 (citing *Farmer*, 511 U.S. at 834). The first prong is objective and requires that prison officials provide inmates with "basic human needs, one of which is 'reasonable safety.'" *Helling v. McKinney*, 509 U.S. 25, 30, 33 (1993) (quoting *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 199 (1989)). "The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry." *Hayes*, 84 F.3d at 620. In particular, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm[,] and he disregards that risk by failing to take reasonable measures to abate the harm." *Id.* As the Supreme Court has made clear, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Price*, 2014 WL 4146276, at *8 (explaining that to establish deliberate indifference, "a plaintiff must prove that the defendant official actually knew of and disregarded an excessive risk of harm to the plaintiff's safety"). A defendant's knowledge can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) ("Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient for a fact finder to conclude that the defendant was actually aware of the risk." (quotation marks omitted)).

### ii. Objective Prong

Construed liberally, Plaintiff adequately alleges that he was incarcerated under conditions posing a substantial risk of serious harm. Generally, "[i]n assessing whether the risk of an inmate's violence against other inmates is 'sufficiently serious' to trigger constitutional protection, the focus of inquiry must be, not the extent of physical injuries sustained in an attack,

but rather the existence of a 'substantial risk of serious harm.'" *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), *aff'd*, 164 F.3d 618 (2d Cir. 1998). Courts may find a substantial risk of serious harm "where there is evidence of a previous altercation between a plaintiff and his attacker, coupled with a complaint by [the] plaintiff regarding the altercation or a request by [the] plaintiff to be separated from the attacker." *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *4 (S.D.N.Y. Sept. 30, 2015) (alteration omitted) (quoting *Gilmore v. Rivera*, No. 13-CV-6955, 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014)). Here, Plaintiff alleges that a previous altercation did take place between himself and Brown. (Pl.'s July 1 Letter 1 ("[T]he no[-]contact [order] was d[ue] to an argument over [Plaintiff's] chow/food[,] which [Brown] gave [to] . . . someone else[,] and [Plaintiff] had to wait for the kitchen to send another[,] so [Plaintiff and Brown] argued[,] and [Plaintiff] was moved . . . .").) Although State Defendants argue that no-contact provisions may be put in place "for any number of reasons," (State Defs.' Mem. 8), Plaintiff alleges that he and Brown were subject to a no-contact order as a direct result of their argument, (Pl.'s July 1 Letter 1).

District courts in the Second Circuit have pointed to the existence, or lack thereof, of no-contact orders as indications that a substantial risk of harm may exist. For example, in *Andrews v. Gates*, No. 17-CV-1233, 2019 WL 2930063 (D. Conn. July 8, 2019), a separation order was put in place after a physical altercation between the plaintiff and another inmate, and the inmate subsequently attacked the plaintiff when they were allowed out of their cells at the same time. *Id.* at *2–3. The court found that the situation "satisfie[d] the objective component of the deliberate indifference standard," because permitting the plaintiff and inmate to be out of their cell at the same time despite a separation order "afforded [the inmate] the opportunity to assault

[the plaintiff] . . . [which] constitut[ed] an excessive risk to [the plaintiff's] health and safety."
*Id.* at *6; *see also Smith v. County of Westchester*, No. 17-CV-9858, 2019 WL 3006407, at *1–3
(S.D.N.Y. July 10, 2019) (concluding that the plaintiff satisfied the objective prong under the
Fourteenth Amendment when he was attacked by an inmate with whom he had previously fought
and "inferring . . . [a] keep-separate order [was] in response to a risk of serious physical harm to
[the] plaintiff"); *Ortiz v. Stancari*, No. 94-CV-1685, 1997 WL 539925, at *5 (S.D.N.Y. Aug. 28,
1997) (stating that a no-contact order, for which the reason was unspecified, between the plaintiff
and another inmate should have indicated that they were to be kept apart); *cf. James v. Orange
Cty. Corr. Facility*, No. 09-CV-7226, 2011 WL 5834855, at *6 n.5 (S.D.N.Y. Nov. 18, 2011)
(suggesting that had the inmates been on a no-contact list with one another, it "would have
indicated that allowing the inmates in the same areas together was dangerous"); *Walton v.
Breeyear*, No. 05-CV-0194, 2007 WL 446010, at *2 (N.D.N.Y. Feb. 8, 2007) (highlighting that
had the plaintiff requested a no-contact order, it would have "signaled to prison officials that he
was fearful of other inmates at the facility").[7]

Defendants argue that Plaintiff "fails to allege facts which would . . . demonstrate . . . a
substantial risk of serious harm," and set forth a litany of items that Plaintiff should have
addressed—for example, inter alia, "the conditions under which he was placed into a holding
cell, the person who placed him in the holding cell, the number of inmates present, the

---

[7] The Court recognizes that the existence of a no-contact order is not necessarily
dispositive as to whether a substantial risk of serious harm exists. *See Gibson v. DiRubbio*, No.
99-CV-3202, 2000 WL 1159553, at *3 (S.D.N.Y. Aug. 16, 2000) (finding that despite a no-
contact order between the plaintiff and another inmate, there was not a substantial risk of serious
harm to the plaintiff because the order was put in place after he assaulted the other inmate,
resulting in the inmate needing stitches, and the plaintiff suffering no injuries), *aff'd*, 12 Fed.
App'x 26 (2d Cir. 2001). Without the benefit of a developed record, however, the Court is not
prepared to rule that here, Plaintiff did not face the risk of such harm in light of his previous
alleged altercation and the no-contact order allegedly imposed by OCJ.

positioning of the cell and its relationship to any post to which a [corrections officer] may have been assigned, the condition of the cell, [and] the size of the cell." (State Defs.' Mem. 7 (citations and quotation marks omitted).) Although Plaintiff does not address all of the facts raised by State Defendants, some of them highly specific, the Court concludes that he has "adequately alleged that he was incarcerated under conditions posing a substantial risk of serious harm" at this stage of the proceedings. *Lebron*, 2017 WL 365493, at *7. The alleged no-contact order between Plaintiff and Brown indicated that they "were to be kept apart," *Ortiz*, 1997 WL 539925, at *5, and may have "indicated that allowing [Plaintiff and Brown] in the same areas together was dangerous," *James*, 2011 WL 5834855, at *6 n.5. Indeed, Falu may have recognized as much when she allegedly instructed Snell that Plaintiff and Brown were not to be kept in the same housing unit. (Compl. 3.) Plaintiff claims that once he and Brown were in the same space, Brown was "afforded [] the opportunity to assault Plaintiff," *Andrews*, 2019 WL 2930063, at *6, resulting in Plaintiff's injury. Had Plaintiff and Brown not been placed in the same unit, the alleged violence presumably would not have occurred. Drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has carried his burden at this early stage to satisfy the objective component.

### iii.  Subjective Prong

Plaintiff also adequately alleges the subjective prong. State Defendants again argue that Plaintiff failed to describe essential facts, such as "whether [] Falu and Snell had actual knowledge of the no[-]contact provision or that they should have known of a no[-]contact provision between [P]laintiff and inmate Brown . . .[,] whether [Plaintiff] was informed of such a separation, what [Plaintiff's] relationship was with inmate Brown, [] whether the two had experienced prior violent interactions, or merely verbal disputes[,] . . . how the alleged incident

occurred, whether inmate Brown, too, was shackled, how long [P]laintiff and inmate Brown were together inside of the [bullpen, etc.]" (State Defs.' Mem. 8.) The Court finds that at this stage, Plaintiff need not plead all of these facts to bring a sufficient claim under the Eighth Amendment. Further, the facts Plaintiff has pled satisfy the subjective prong. According to Plaintiff, Falu knew that Plaintiff was under a no-contact order with Brown, and knew that the order meant that the two were to be kept apart. (Compl. 3; Am. Compl. Supp. 2.) Plaintiff further alleges that Falu informed Snell of the same. (*Id.*) Taken as true, these allegations establish that Defendants had actual knowledge of the no-contact order and were aware that Plaintiff and Brown were not to be held together. *See Thomas v. DeMeo*, No. 15-CV-9559, 2017 WL 3726759, at *8 (S.D.N.Y. Aug. 28, 2017) ("In general, to satisfy the requirements of an Eighth Amendment failure to protect claim, a plaintiff must allege that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff." (citation and quotation marks omitted)); *cf. Blandon v. Capra*, No. 17-CV-65, 2017 WL 5624276, at *8 (S.D.N.Y. Nov. 20, 2017) ("Plaintiff does not allege that Defendants were aware of prior altercations between [an inmate and the Plaintiff] . . . ."); *Laporte v. Keyser*, No. 12-CV-9463, 2014 WL 4694344, at *4 (S.D.N.Y. Sept. 18, 2014) (concluding that there was "simply no evidence in the record to suggest that [the] [d]efendant was privy to the animosity between [the] [p]laintiff and [another inmate]," including the fact that the inmates "were not placed on each other's separation lists"); *Lee*, 2000 WL 231083, at *5 ("[T]he plaintiff has made no showing that the defendant knew of, let alone ignored, any risk to the plaintiff from [another inmate]."). Plaintiff further alleges that State Defendants put Brown in the same unit as Plaintiff, (Am. Compl.), thus "disregard[ing] th[e] risk" of placing Plaintiff and Brown together, and "failing to take reasonable measures to abate the risk of harm," *Hayes*, 84 F.3d at 619; *see also*

*Andrews*, 2019 WL 2930063, at *7 ("If [the corrections officer] was aware of the 'keep separate' list . . . and still permitted [the plaintiff and his attacker] to be out of their cells in the unit at the same time, he could be deliberately indifferent to [the plaintiff's] safety."). Although "[d]iscovery may very well show" facts that complicate or vary from Plaintiff's allegations, "[a]t this stage . . . Plaintiff has alleged facts that, if proven true, would establish that [State Defendants] acted with deliberate indifference in failing to act" in accordance with the no-contact order. *Lebron*, 2017 WL 365493, at *7.

### c.  Inmate Defendant

Defendant Brown is an inmate at OCJ.  Although Plaintiff alleges that Brown physically assaulted him, the Court must dismiss Plaintiff's claims pertaining to this inmate.

A district court shall dismiss an in forma pauperis action "at any time" where it determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  Here, Plaintiff's Action fails to state a claim against Brown.

In order to bring an action under § 1983, "the conduct complained of must have been committed by a person acting under color of state law," and "must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).  Brown is an inmate, and not a state actor. As such, Plaintiff cannot reach his conduct in this lawsuit.  *See Wright v. Stallone*, No. 17-CV-487, 2018 WL 671256, at *8 n.8 (N.D.N.Y. Jan. 31, 2018) (dismissing claims against three inmates who "are not state actors" in a § 1983 suit); *Lewis v. Doe*, No. 13-CV-3190, 2013 WL 5923723, at *1 (E.D.N.Y. Oct. 31, 2013) (dismissing the plaintiff's § 1983 claims against "another inmate, who is not a state actor"); *see generally Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526

U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.") (quotation marks omitted). Thus, the Court dismisses Plaintiff's claims against Defendant Brown under 28 U.S.C. § 1915(e)(2)(B).

### III. Conclusion

For the foregoing reasons, State Defendants' Motion To Dismiss is denied. However, the Court dismisses with prejudice Plaintiff's claims against Defendant Brown under 28 U.S.C. § 1915(e)(2)(B). The Court denies IFP status for appeal of this dismissal, as any appeal would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court is respectfully directed to terminate the pending motion, (Dkt. No. 38), terminate Defendant Brown from the docket, and mail a copy of this Order to Plaintiff. The Court will hold a Status Conference on January 15, 2020 at 11:00 a.m.

SO ORDERED.

Dated: December 5 , 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

21